**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**

**November 21, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **R.A. and A.P.**

**No. 18-0503** (Hampshire County 16-JA-80 and 16-JA-81)

# MEMORANDUM DECISION

Petitioner Mother K.A., by counsel David P. Skillman, appeals the Circuit Court of Hampshire County's March 16, 2018, order terminating her parental rights to R.A. and A.P.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Joyce E. Stewart, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court was clearly erroneous in making specific factual findings, in finding that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected, and in terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In October of 2016, the DHHR filed a petition alleging that R.A. was "whipped to the point of bruising" by his father. According to the DHHR, petitioner failed to protect the child and did not report the incident to police. The father was charged with one count of child abuse resulting in injury. The DHHR further alleged that petitioner traveled with A.P. to the Potomac Highland Regional Jail so she could provide transportation to the father after his release on bond. The DHHR asserted that petitioner was not acting in a protective manner towards A.P. and R.A. by continuing to allow the children to have contact with the father. Finally, the DHHR alleged that the father had a history of domestic violence against petitioner in the presence of the children. The DHHR alleged that the father was convicted of domestic battery in July of 2016 after choking petitioner and that petitioner resumed the relationship with the father two months after that conviction. Petitioner waived her right to a preliminary hearing.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

The circuit court held an adjudicatory hearing, and petitioner stipulated that she failed to protect the children from their father, that she failed to seek medical treatment for the injuries the father caused to R.A., and that the children were exposed to multiple instances of domestic violence in the home. Accordingly, the circuit court adjudicated petitioner as an abusing parent. Petitioner was granted a post-adjudicatory improvement period which required that she participate in a psychological evaluation, adult life skills classes, individualized parenting, and a domestic violence class.

In March of 2017, R.A. participated in a psychological evaluation and was subsequently diagnosed with autism spectrum disorder accompanied with language impairment. R.A. was noted to have continued difficulties in communication, social interaction, and repetitive behaviors. The evaluator recommended that R.A.'s diagnosis be considered in determining if reunification was appropriate and that petitioner receive specialized education in caring for a child with autism spectrum disorder. Additionally, the foster mother expressed concerns that R.A. became overwhelmed during visitation with petitioner and his maternal grandmother because the grandmother also brought her children. Accordingly, the circuit court suspended visitation between the children and grandmother.

Petitioner participated in a parental fitness evaluation in April of 2017. During the evaluation, petitioner admitted to multiple instances of domestic violence and abuse by the father. Petitioner further admitted that she was abused by her mother. The psychologist recommended continued participation in domestic violence counseling and adult life skills classes, participation in autism training classes, and that petitioner pursue her GED. With completion of these services, the psychologist offered a "favorable" prognosis for petitioner.

In June of 2017, the circuit court held a review hearing and ultimately extended petitioner's post-adjudicatory improvement period by three months. However, the DHHR noted concerns in a recent multidisciplinary team meeting ("MDT") that the grandmother was present at their first unsupervised visitation in petitioner's home. Additionally, petitioner was discharged from therapy after missing three sessions. Petitioner indicated that she found new employment and that she "[did] not have time for counseling." At a subsequent MDT in September of 2017, petitioner indicated she resumed counseling. Petitioner further advised that her work schedule allowed her to have the children during the day and that the children's grandparents would watch the children at night. The parties agreed that visitations were going well, but that petitioner consistently brought chicken nuggets for the children and that she needed to diversify the type of food brought to the visits. A final MDT was held in October of 2017, and petitioner expressed frustrations regarding visitations and supervision. Further, petitioner asserted that the foster family created inconsistency by not properly disciplining the children at home. The DHHR indicated that the case would be set for disposition.

After two prior evidentiary hearings, the circuit court held the final dispositional hearing in January of 2018. The circuit court found that petitioner was provided services for more than one year and failed to demonstrate consistency in the discipline and parenting of her children. Additionally, petitioner failed to complete domestic violence counseling. Further, petitioner lacked appropriate insight into how her behaviors affected the relationship with her children. Petitioner continued to engage in romantic relationships with inappropriate individuals. The

circuit court also found that petitioner had not located services that would meet the special needs of R.A. Petitioner planned to enroll the children in school in West Virginia while she continued to live in Virginia because she did not know where to enroll the children in Virginia.

Ultimately, the circuit court found that there had not been substantial compliance with the terms of the improvement period and that there was not sufficient improvement in the context of all the circumstances to justify the return of the children after the lengthy improvement period. Accordingly, the circuit court found there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected. The circuit court memorialized its decision in its March 16, 2018, order. Petitioner now appeals that order.[2]

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

On appeal, petitioner argues that the circuit court abused its discretion in finding that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected because the DHHR presented no evidence that petitioner and the father continued in a relationship. According to petitioner, the condition that needed to be corrected was the abusive domestic relationship between herself and the father. Petitioner asserts that the relationship was ended without any evidence to the contrary and, therefore, the condition was corrected.[3] We disagree with petitioner.

---

[2]The father's parental rights were also terminated as a result of these proceedings. According to the parties, the permanency plan for the children is adoption in their current foster placement.

[3]As part of her argument, petitioner's second assignment of error takes specific issue with the circuit court's findings in its "order following disposition hearing" wherein the circuit court found that petitioner had continued contact with the father after his arrest. However, it is clear

(continued . . . )

3

West Virginia Code § 49-4-604(b)(6) provides that a circuit court may terminate parental rights upon findings that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the welfare of the children. Additionally, West Virginia Code § 49-4-604(c)(3) provides that no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected exist when the "abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts[.]"

The conditions of abuse and neglect that needed to be corrected were more than just the relationship between petitioner and the father. Petitioner admitted that she failed to protect the children from physical abuse from the father. Significantly, petitioner admitted in her psychological evaluation that the father watching the children alone was a "last resort" to which she agreed due to a lack of appropriate caregivers. Petitioner further indicated that she previously did not allow the father to watch the children alone because of "his history of violence," of which the record shows petitioner was also a victim. Additionally, petitioner admitted that she failed to seek medical attention or advice for the injuries the father dealt to the children and that the children were exposed to "multiple instances of domestic violence in the home." Petitioner's argument, which attempts to narrowly tailor the abuse as just the relationship between petitioner and the father, does not consider the practical implications of petitioner's past behavior. Despite multiple violent acts of the father, petitioner continued to associate herself and her children with him. Petitioner's behavior shows a failure to recognize major dangers in her life and remove the children from that danger. To her credit, petitioner acknowledged the father's "history of violence," but her failure to remove her children from that perpetual danger is much more serious than simply ending the relationship with the father. Therefore, we find petitioner's argument that the conditions of abuse and neglect were substantially corrected because she ended her relationship with the father unpersuasive.

Rather, the circuit court correctly found that the conditions of abuse and neglect could not be substantially corrected in the near future because petitioner did not respond to a reasonable family case plan. The circuit court found that "petitioner lacked insight into how her behaviors affect the relationship with her children," which is clear from her behavior throughout the improvement period. For example, petitioner entered a relationship with a person in August of 2017, late in her improvement period. However, the circuit court found that "[petitioner's] new boyfriend was inappropriate" and petitioner does not challenge that finding on appeal. Further, petitioner did not seek out any community resources to help with R.A.'s diagnosis of autism spectrum disorder or any specific programs that R.A. would need in her care. We have previously held that "[i]n making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, *In re B.H.*, 233 W.Va. 57, 754 S.E.2d 743 (2014). As noted in the record, petitioner lives in Virginia and the children were fostered in West

that the circuit court was recounting the procedural history of that case and petitioner's prior stipulation to the petition. Accordingly, we decline to address this assignment of error on appeal.

Virginia. Therefore, services to address R.A.'s autism spectrum disorder and language impairment were necessary for the child's development and petitioner's failure to seek out those services locally was against his best interests.

Further, petitioner failed to adequately and consistently discipline the children. Although petitioner asserts that the circuit court abused its discretion in finding that she failed to adequately discipline the children because of the mixed evidence provided by visitation supervisors, we find that the circuit court's finding is not an abuse of discretion. "A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997). We agree that the visitation supervisors provided reports of mixed success in regard to petitioner's discipline of the children. However, the DHHR admitted that the earliest positive reports may not have been accurate. Petitioner asserts that one of the agencies was biased against her and purposefully included negative feedback. Yet, that bias is not obvious from the record. Thus, we find the circuit court's finding regarding petitioner's inconsistent discipline is not an abuse of discretion.

Petitioner further argues that her learning disabilities and the children's special needs made disciplining the children difficult. We note, however, that petitioner's services were designed to address these issues. Despite specialized services, petitioner's inconsistent discipline was an obvious safety issue for the children. The children were reportedly violent, often to each other, and petitioner declined to undergo community visits with the children based on her anxiety that R.A. would hurt another child. On appeal, petitioner illustrates the "typical chaos that took place during [petitioner's] visitations" that includes R.A. striking A.P. twice, one strike leaving a "hand print mark on [A.P.'s] cheek," A.P. being placed in "time-out" three times for bad behavior, and R.A. being placed in "time-out" twice. Petitioner was provided over a year of services to learn to properly discipline the children, yet she could not consistently do so. As we have previously held

> "courts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 4, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Again, petitioner participated in several months of services, but failed to make significant enough improvement to exercise custody over the children. The circuit court does not need to speculate on what benefit petitioner may have gleaned from additional months of services. Therefore, we find the circuit court did not abuse its discretion in finding there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected.

Petitioner next takes issue with several of the circuit court's factual findings, including its finding that she exposed the children to their maternal grandmother and that she brought only chicken tenders for the children during visitations. However, these issues are minor in comparison to petitioner's inconsistent discipline, her lack of initiative in seeking autism resources in the community for R.A., and her continued participation in inappropriate relationships. Put another way, the circuit court did not terminate petitioner's parental rights on these two considerations alone. Even if the circuit court erred in these findings, we find overwhelming evidence to support a finding that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected. Accordingly, we find that petitioner is entitled to no relief.

Finally, we have also held as follows:

> "Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va. Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va. Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). As detailed above, the circuit court properly found that there was no reasonable likelihood the conditions of abuse and neglect could be substantially corrected. Importantly, termination of petitioner's parental rights was also necessary for the welfare of the children. Petitioner demonstrated an inability to care for the special needs of the children when she failed to find specific services for R.A.'s special needs. Also, the circuit court found that petitioner set an "unrealistic" child care plan, which required petitioner to sleep only three hours per day. Accordingly, we find that the circuit court did not abuse its discretion in terminating petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its March 16, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**: November 21, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice Paul T. Farrell sitting by temporary assignment